UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOSENER DORISCA, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil Action No. 17-10376-FDS |
| RAYMOND MARCHILLI, | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER ON**
**THE PETITION FOR A WRIT OF HABEAS CORPUS**

**SAYLOR, J.**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner Josener Dorisca is an inmate at the Massachusetts Correctional Institution at Shirley ("MCI-Shirley"). He was convicted of second-degree murder and sentenced to life in state prison with the opportunity of parole after fifteen years. He now seeks habeas relief pursuant to 28 U.S.C. § 2254. He asserts (1) a violation of his right to confrontation by the admission of deposition testimony of a medical examiner without an adequate showing that she was unavailable to testify at trial, and (2) a violation of due process by denying his motion for a mistrial in response to misstatements of evidence made during closing arguments.

For the reasons set forth below, the petition for a writ of habeas corpus will be denied.

**I.  Background**

    **A.  Factual Background**

On June 8, 2008, Josener Dorisca attended a cookout on Turner Street in Brockton,

Massachusetts. Joanne Jean-Pierre, who was not in attendance, had two children with Dorisca, but at the time of the incident was romantically involved with Bensney Toussaint. A physical altercation between Dorisca and Toussaint occurred outside of the cookout, which multiple witnesses testified Toussaint provoked. *Commonwealth v. Dorisca*, 88 Mass. App. Ct. 776, 777-78 (2015). At some point during the altercation, Toussaint was shot multiple times in the chest. Toussaint was pronounced dead upon arrival at the hospital. *Id.* at 778. Shortly thereafter, Dorisca fled Massachusetts for Florida, where he remained for two and a half years. He was arrested on unrelated charges in Florida in 2011, and the outstanding warrant for his arrest in Massachusetts was discovered. *Id.* at 779. During the proceedings, Dorisca maintained that his cousin Rodley Doriscat shot the victim to defend him. *Id.* Rodley committed suicide three years before the trial. *Id.*[1]

### B. Procedural Background

Dorisca was charged with first-degree murder. Following a jury trial in the Plymouth County Superior Court, he was convicted of second-degree murder and sentenced to life with the opportunity of parole after fifteen years. Dorisca appealed to the Massachusetts Appeals Court ("MAC"), which affirmed the conviction on December 23, 2015. *See Dorisca*, 88 Mass. App. Ct. at 786. Dorisca filed an Application for Leave to Obtain Further Appellate Review ("ALOFAR") with the Supreme Judicial Court of Massachusetts, which was denied on March 3, 2016. *Commonwealth v. Dorisca*, 473 Mass. 1111 (2016).

On March 7, 2017, Dorisca filed a petition for a writ of habeas corpus relief pursuant to 28 U.S.C. § 2254. He asserted three grounds for relief in his petition:

(1) violation of the right to confrontation by the admission of deposition testimony of a

---

[1] The Court is referring to the cousin by his first name, Rodley, to avoid confusion.

medical examiner without an adequate showing that she was unavailable to testify at trial;

(2) violation of due process by denying petitioner's motion for a mistrial in response to misstatements of evidence made during closing arguments; and

(3) violation of due process by allowing the admission of repetitious testimony concerning the number of witnesses interviewed during the investigation.

(Pet. at 6, 8-9).

On May 25, 2017, respondent filed a motion to dismiss the petition because petitioner had not exhausted his remedies as to ground three. On July 18, 2017, this Court entered an order stating that it would grant the motion to dismiss unless petitioner moved to dismiss the unexhausted claim and proceed on the merits of the exhausted claims. Petitioner so moved, and the Court granted the motion.

On November 10, 2017, petitioner filed a memorandum in support of his petition for a writ of habeas corpus on the remaining two grounds. Respondent has now filed a memorandum in opposition to the petition.

## II. Standard of Review

Under 28 U.S.C. § 2254(d), a federal court may not grant a habeas petition "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law if it (1) "applies a

rule that contradicts the governing law set forth in [the Supreme Court's] cases" or (2) resolves a case differently from the Supreme Court on a set of "materially indistinguishable" facts. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). In either scenario, the state-court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to Supreme Court precedent. *Williams*, 529 U.S. at 405.

A state-court decision involves an "unreasonable application" of federal law if the state court identified the correct governing legal principle from the Supreme Court's decisions, but applied it in an objectively unreasonable manner. *See Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (citing *Williams*, 529 U.S. at 409). The Supreme Court has cautioned that "[a]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 411. The state court's application of federal law must be "more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75 (citing *Williams*, 529 U.S. at 410, 412); *see also Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007) ("A decision can still be reasonable even if the reviewing court thinks it is wrong; 'unreasonable' here means something more than incorrect or erroneous."). Furthermore,

> if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application . . . . [S]ome increment of incorrectness beyond error is required. The increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court.

*McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (internal citations and quotation marks omitted).

### III. Analysis

#### A. Ground One: Confrontation Clause

Petitioner contends that the court's admission of the medical examiner's video-recorded

4

testimony, without ascertaining that she was unavailable to testify at trial, was a violation of the his constitutional right to confront witnesses.

The Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI; *Barbosa v. Mitchell*, 812 F.3d 62, 66 (1st Cir. 2016); *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The Supreme Court has held that that provision "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

Here, the trial judge ruled that the medical examiner was unavailable based entirely on the prosecutor's report that she had gone into labor four days earlier, even though there was no further information as to her condition. The prosecutor introduced her videotaped deposition, which had been conducted in the courtroom before the trial judge, and during which Dorisca's attorney had an opportunity to cross-examine her. *Dorisca*, 88 Mass. App. Ct. at 779-80. In that deposition, she testified about the victim's wounds and the cause of death, and opined that the shots originated from an "intermediate range," from a few inches to a few feet. *Id.* at 784 n.17; (Springer Dep. at 12-13, 16-17, 32-33, 44). The Appeals Court determined that the admission of the video deposition violated Dorisca's Sixth Amendment right to confrontation, because the trial judge had not had up-to-date information about the witness's condition and had given no consideration as to whether she could appear later in the trial or whether a short continuance would solve the problem. *See Dorisca*, 88 Mass. App. Ct. at 780-85 (discussing the unavailability standard set forth in *Commonwealth v. Housewright*, 470 Mass. 665 (2015)).

5

But even when a defendant's constitutional right to confrontation is violated, it does not necessarily mean that he is entitled to habeas relief. In the absence of the "rare type of error" that requires automatic reversal, relief is appropriate only if the prosecution "cannot demonstrate harmlessness." *Glebe v. Frost*, 135 S. Ct. 429, 430 (2014) (per curiam).

To determine whether a Confrontation Clause violation is harmless, a reviewing court should consider "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). Because Dorisca did not contend that the court made the type of error requiring automatic reversal, the Commonwealth had the burden of demonstrating "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Dorisca*, 88 Mass. App. Ct. at 783-84 (citing *Commonwealth v. Marini*, 375 Mass. 510, 520 (1978) (quoting from *Chapman v. California*, 386 U.S. 18 (1967))).

Here, the Appeals Court held that any error was harmless beyond a reasonable doubt. It concluded that the deposition testimony of the medical examiner was "cumulative of other evidence in the case." *Dorisca*, 88 Mass. App. Ct. at 784 (distinguishing *Housewright*, 470 Mass. at 669, where the witness's testimony at issue was "significant, if not indispensable, to the Commonwealth's case."). It further concluded that the "central factual dispute in this case was the identity of the shooter," and that the medical examiner's testimony had no bearing on that question because nothing in the testimony tended to show that Dorisca was more or less likely to be the shooter as compared to Rodley. *Id.* at 784-85; *see Coy v. Iowa*, 487 U.S. 1012, 1021-22 (1988); *see also Commonwealth v. DiBenedetto*, 414 Mass. 37, 41 (1992) (error is harmless if

erroneously admitted deposition "was not a substantial factor in the jury's decision to convict").

While the underlying Sixth Amendment violation is subject to direct review for harmlessness under the beyond-a-reasonable-doubt standard described above, a different standard applies on collateral review of that harmlessness determination. "[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Pillar*, 551 U.S. 112, 119 (citing *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam)). To be entitled to habeas relief, a petitioner must show that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see Fry* 551 U.S. at 119; *Connolly* v. *Roden*, 752 F.3d 505, 510-11 (1st Cir. 2014).

The decision of the Appeals Court that the Confrontation Clause violation was harmless was not unreasonable. The expert's testimony as to the nature and extent of the wounds and the cause of death was corroborated by the emergency room doctor, other witnesses, medical records, and autopsy photographs. (Tr. vol. 3 at 178-80; Tr. vol. 4 at 189, 199, 205-06; Tr. vol. 5 at 7-9, 20, 105). Furthermore, the cause of death was not disputed. Her testimony that the shots were fired from "intermediate range" did not necessarily incriminate Dorisca, because it left doubt on where the shots originated from, which was the point at issue at trial. (Tr. vol. 7 at 12-13). Dorisca's attorney even used the medical examiner's assessment of the origin of the shots as evidence that there was reasonable doubt as to whether it was Dorisca or Rodley who shot the victim. *Dorisca*, 88 Mass. App. Ct. at 785. Furthermore, Dorisca's attorney had a robust opportunity to cross-examine the absent witness. Although Dorisca complains that he was not able to cross-examine the medical examiner using the actual trial testimony of the eyewitnesses

7

to the altercation, he was not prevented from asking about the trajectories of the bullets and the relative positions of the shooter and the victim. Therefore, the Appeals Court reasonably concluded that any constitutional violation did not have a substantial and injurious effect on the jury's verdict. Because that decision was not contrary to, and did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence, habeas relief will not be granted as to Ground One.

### B. Ground Two: Prosecutorial Misconduct

Dorisca further contends that in its closing argument, the prosecution misstated the evidence twice, over the defendant's objection, which created a prejudicial error that was reinforced when the trial judge denied defendant's motion for a mistrial.

The standard of review for constitutional claims of prosecutorial misconduct is whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id.* (citing *Donnelly*, 416 U.S. at 642). "There is no precise federal standard governing due process claims based on a prosecutor's remarks." *Dagley v. Russo*, 540 F.3d 8, 15 n.3 (1st Cir. 2008). Courts consider the severity of the misconduct, whether it was deliberate or accidental, the context in which it occurred, the likely curative effect of the judge's admonitions and the strength of the evidence against the defendant. *Id.* (citing *United States v. Nelson-Rodriguez*, 319 F.3d 12, 38 (1st Cir. 2003)).

Here, in his closing argument, the prosecutor stated:

> You heard his testimony; he's not face up. He says he's face down, all these men are kicking him and at the time he wants you to believe that Bensney Toussaint is slamming his head in the ground. But then he says I can still see Rodley Doriscat come up, poke Bensney with the gun. I can see Bensney reach for it and then I see Rodley shoot him.
>
> Is that credible? Is it reasonable that someone with his face down can miraculously now see Rodley Doriscat allegedly shooting to protect him? No. But he needs it to be credible. Why? He needs to corroborate the confession.

(Tr. vol. 7 at 39-40). However, Dorisca had not testified that he saw Rodley shoot Toussaint; rather, he testified that he saw Rodley running away with a gun and that Rodley later told him that he had poked Toussaint with the gun in order to get Toussaint off Dorisca, but then Toussaint had grabbed Rodley's wrist and Rodley shot him. (Tr. vol. 6 at 59-60, 73).

Similarly, the prosecutor misstated Dorisca's testimony concerning the events preceding his arrest. Dorisca was a passenger in a car that was stopped by a police officer. The prosecutor stated that Dorisca had testified that the officer asked his name before the name of the driver: "The defendant says that he is stopped and Deputy Delanuez asks him first, not the driver who is stopped, but the passenger what his name was." (Tr. vol. 7 at 43). However, Dorisca stated that he was asked his name after the officer questioned the driver, and that he gave the officer his real name at first, but the officer did not believe him, because he thought that Dorisca should have a Haitian-sounding name like the driver, so he gave him a fake name. (Tr. vol. 6 at 82-83, 98-100, 102-03).

Although the trial judge did not give any instructions concerning those statements particularly, he did generally instruct the jury that it was "to decide what the facts are solely from the evidence admitted . . . and not from suspicion or conjecture," and that "[t]he opening statements and the closing arguments of the attorneys are not a substitute for the evidence." The judge further emphasized to the jury that it was their role to establish the facts solely from the evidence by saying that if the jurors' "memory of the testimony differ[ed] from the

9

attorneys['] . . . [they were] to follow [their] own recollection." (Tr. vol. 7 at 52-54).

The Appeals Court acknowledged that the prosecutor misstated Dorisca's testimony. *See Dorisca*, 88 Mass. App. Ct. at 785. However, it concluded that these errors were not prejudicial because they were not significant, considering the evidence as a whole. *Id.* at 786 (citing *Commonwealth v. Wood,* 469 Mass. 266, 285-86 (2014), for the prejudicial error standard). Specifically as to the prosecutor's statement that Dorisca had seen Rodley shoot Toussaint, the Appeals Court concluded that because Dorisca testified that he saw his cousin Rodney run away with the gun and that Rodney had later confessed shooting Toussaint to him, the prosecutor's error was not prejudicial. *Id.* As to the order in which the Florida officer asked for names, the Appeals Court held that was not prejudicial error because it was insignificant. *Id.* at 786 n.19 (citing *Commonwealth v. Richenburg*, 401 Mass. 663, 674–75 (1988)).

The decision of the Appeals Court that the prosecutor's misstatements were not prejudicial is not contrary to Supreme Court precedent or an unreasonable application of clearly established federal law. And the prosecutor's statements did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process," especially in light of the trial judge's clear instructions that the jurors were to follow their own recollection of the testimony. *See Darden*, 477 U.S. at 181. Therefore, habeas relief will be denied as to Ground Two.

### III. Conclusion

For the foregoing reasons, petitioner's petition for a writ of habeas corpus is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: August 20, 2018  United States District Judge